Good morning, Your Honor. Todd Bice. I represent Mr. Molasky in both of the matters, and I am willing to handle it however the Court would prefer, or my colleague, Mr. Rivers, and Mr. Netzorg, however they would like to proceed. I'm agreeable either way. Okay. Just, if you could let me know what you think, Mr. Rivers. Good morning. I'm David Rivers on behalf of the W. Leslie Sully profit-sharing plan. Mr. Netzorg's issues, I believe, are probably about as closely related as anything could be, and if Mr. Bice is willing, you know, I'll do five minutes instead of ten. That's fine with me. All right. Well, why don't – do you – I am Mr. Netzorg. Good morning, Your Honor. Good morning. They are closely related, and we've always – and has the district court treated them together? Why don't you take a seat here and we'll combine. If you don't have any objection, then we'll do that. All right. Then we're ready to proceed. I think each side gets ten minutes, but you would have 20 minutes, so if you need – I'm sorry. How would you like to – If the – I would be fine if he would leave it at ten, Your Honor. I wouldn't anticipate – I would reserve my additional ten minutes for rebuttal, but I certainly have no intention of using it for that. All right. Thank you very much. May it please the Court, Todd Bice on behalf of Mr. Molaski, and I thank the Court for treating both of these matters together because I think that they're sufficiently combined and straightforward. We are here on appeal from a district court decision which had reversed two bankruptcy court decisions, and the bankruptcy court decisions were substantively the same, and that was that an intervening plaintiff cannot revive the claim after the fact of the dismissal of the original adversary proceeding. What happened in this case is Mr. Molaski had filed a Chapter 11 bankruptcy proceeding. The bar date for contesting claims, the dischargeability of claims, was August 11th of 2008. On that day, the date of the bar, an entity known as One Cap filed an adversary proceeding over three different notes. One of them was known as the Ellington note, another was known as the Long Beach note, and another was known as the Chateau note, probably more appropriately described as debts because there were multiple notes that underlie them, obviously. One Cap filed that action because it was the servicing agent for everyone on those three particular debts. Subsequently, after the bar date, Mr. August Bustos, I believe it's Bustos, I want to make sure I pronounce it correctly, filed a motion to intervene in the action that One Note had commenced, or One Cap had commenced. That was not opposed except to this extent. Molaski opposed that motion to the extent that Mr. Bustos was attempting to become, to file a complaint in intervention himself. Molaski had no objection to him intervening with respect to assisting One Cap, but we did object and the district court had agreed that Mr. Bustos would not be allowed to file a separate complaint in intervention, which is what he had attempted to do. Move then forward. One Cap ---- And is that because he was time barred or he was ---- Yes, he was time barred. That was our position is that he was time barred because the bar date was August 11th and only One Cap had commenced the action as of that date. Moving forward, One Cap essentially abandoned the underlying claims and the matter languished. The bankruptcy court had scheduled an order to show cause because its counsel had withdrawn no one appeared, although Mr. Bustos did appear through counsel. Subsequently, the matter is dismissed. Now, I need to back up a little bit because I jumped ahead a little too far. While this was going on, another creditor, the Less Sully Profit Sharing Plan, which had had a $100,000 note as part of that Ellington debt, had also sought to intervene. Now, what happened there was the parties entered into a stipulation which would allow the Sully Profit Sharing Plan, which I'll just refer to as Sully for convenience, to intervene in the action. Again, from Mulaski's standpoint, it is on the same terms as that of Mr. Bustos, and that is the claim was time barred because it was past the bar date, substantially past the bar date, and therefore he was allowed to intervene in the action, but only on with respect to the claims that One Cap had asserted. He could not be asserting claims in his own right. Now, you don't spell that out, do you, that he's time barred? I'm sorry. I'm sorry, Judge. You do not spell it out in that agreement. We do not spell out that he is time barred. We do not put in the stipulation an agreement by him that he is time barred. That is true. But you would also note he did not file any complaint in intervention under Rule 24C, which the rule would expressly require if he was going to be asserting claims in his own right. And that, I think, confirms quite clearly the fact that there was no separate claim that Mr. Sully or that Sully could assert in this action. Then we move forward. One Cap is dismissed. Now, the stipulation with Sully is sat on for a considerable period of time, and obviously there's a little bit of dispute amongst the parties about why that happened. Nonetheless, the district court didn't need to resolve that question about why that happened. Ultimately, with One Cap out, Bustos's claim is time barred. One Cap is dismissed. The motion to file or motion to dismiss against Bustos is then filed by Malasky because he doesn't have a complaint. He was simply involved in the case by our consent because we consented to his intervention by our only partial opposition to his motion to intervene. And so he also does not have any independent claim for jurisdiction before the court. He doesn't have a complaint. The only complaint on file is by One Cap, which is now that complaint has been dismissed. And I don't know if I'm getting ahead of you or not, but what does an independent basis for jurisdiction mean in Benavides? I believe what it means, as I read Benavides and as I read Fuller, the Third Circus decision, what they are talking about there is the intervening party should be allowed to proceed with the case because the intervening party would otherwise be allowed to file their own complaint in a separate action and the whole process would start over again. And so what Benavides is talking about in my view is could this action simply be restarted because if that's what could happen, there is no need for the judiciary to waste resources, its own resources, the litigants' resources, to simply force that process to start anew. But if that process cannot be started anew, in other words, if the intervener cannot bring a new action, then the case is over. And I believe that's what Benavides says and I believe that's what Fuller says because in those particular cases, you have to have an independent basis for jurisdiction, meaning they would have to be able to bring a claim in their own right at that point in time, and neither of them had that ability. And once one cap is dismissed, the case is over with. The original plaintiff is the service agent. There's no real – and these other people are the real parties of interest. Now, aren't we interested in doing equity and being sure that the real parties of interest have a chance to assert their claims? Well, in this particular case, number one, I don't agree, Your Honor, with the premise that a servicing agent is not the real party in interest. The servicing agent can recover the debt. They are the real party in interest. There is no question. But it's not the financial interest they have, is it? No, I disagree with that. They could recover the entire judgment, which is, by the way, exactly what one cap intended to do. I don't know what one cap's obligations are to their clients about distribution of that judgment. Assume that one cap prosecuted the claim. Assume that one cap prevailed and it received, I believe at the end of the day there, they were seeking something around $9.5 million on the Ellington note. Let's assume for the sake of argument that that all happened. One cap would be entitled to collect on that judgment as the real party in interest, and then what it does with that money, how it distributes it amongst its various stakeholders, is between one cap and its stakeholders. But that does not in any way mean that one cap did not have standing and was not the real party in interest here, because it was. Could the interveners have attempted to substitute in for one cap after one cap was dismissed under Rule 7025? Well, not after they had been dismissed. Now, had they filed to seek to substitute in in the stead of one cap prior to then When they were dismissed. That obviously would have been decided by the bankruptcy court, and we obviously would have opposed it because of the bar date, because they are not in that particular case the plaintiff. But did they try to do that? They did not try to do that. And that is an additional point we have made. And I want to ask a question before your time. Yes. I guess how is this case distinguishable, or is it from the Third Circuit case you cite in your brief, the U.S. Steel v. EPA? It is distinguished because in this particular case, Your Honor, they did not have a pleading in this case. They were barred by time. They had filed no pleading as a plaintiff in this case because they were barred by time. In fact, Mr. Boutros had attempted to file his complaint and intervention under Rule 24C, which if you're going to claim that you have the ability to file a separate complaint, you obviously would have to do. They did not do that. And so once the one-cap action is dismissed, the one-cap action is over, and an intervener can't come in after the fact and say, well, I now want to revive that. There was no operative complaint on file by either of the interveners in order to substitute as the complaint that would make the claim survive. I see my time is up, so I will reserve for rebuttal. Okay. It certainly will not need 10 minutes. Thank you. Thanks, Court. Good morning. David Rivers appearing on behalf of Sully, as we're calling him. Let me apologize for citing an overruled bankruptcy case. Let me get that out of the way. My first point that I have on my notes is what does the term independent jurisdiction mean in these cases? I would assume that independent jurisdiction means there is a case or controversy and that there is a legal basis, for example, a statute in this case, the bankruptcy court's jurisdiction over adversary proceedings that creates that jurisdiction. Yes? Are you meaning an independent basis for jurisdiction? An independent. All right. Let us, for example, let us go to the U.S. Steel case. In the U.S. Steel case, they were relying on a Federal question, and both of those parties, both the Steel Company and Scott Paper, had the same issue. It was the same concern. In this case, the one cap was filing on behalf of all of its investors. Sully and Bustos happened to be two of those investors who actually were holders of the notes. So we have relying upon the bankruptcy court's jurisdiction over adversary proceedings. We know it has the power to hear the case. Is there a case or controversy in which Sully is interested? There is, and that is the case that was filed by one cap. Now, it's been noted over and over that the one cap case was dismissed. I would refer you to the order of dismissal, which strictly says that the case is dismissed as to one cap only. It was for one cap's bad behavior that it was dismissed as a party. As to one cap only, or you're saying it says as to one cap? Does it say as to one cap only? It says no, no, I apologize. It says as to one cap, holding company. It does not say the case is dismissed. If it said the case is dismissed, I would challenge the Court to even hear the second two motions, because once the case was gone, the Court would be giving an advisory opinion as to Bustos and Sully. Are your claims not time-barred? I mean, because if they are time-barred, how can you have an independent basis for jurisdiction? And there's the question. The complaint was filed timely. We intervened in the complaint. According to several of this circuit cases, an intervener holds the same place as an original plaintiff. An intervener is essentially an original plaintiff for those purposes. Explain to me, I guess, how your claims are timely. Our claims were timely because the debtor, Mulaski, waived any objection to the untimeliness of those claims by allowing us to intervene in the first place. Well, this was a permissive intervention? Your Honor, there's the good question. Whether it was permissive or not, I don't know. We were a, as the Justice stated, a real party in interest. We believe we would have had the right to intervene as of right. The Bankruptcy Court repeatedly called it a permissive intervention, but there was no motion that was filed. It was simply done by stipulation. The Sully Trust is, in fact, a holder of the note, which is the subject of a portion of the complaint. And as such, we believe we would have been allowed to file as a matter of right. Now, the I guess, just to kind of go over that, again, because it sounds like that's a really important point. I guess, just because you have an independent basis to intervene, does it mean you have an interbasis to, an independent basis to remain after dismissal of one cap? Well, if we have an independent basis to intervene, what is it that causes us to lose that basis once one cap is out of the case? I don't understand. There's no loss, for example, in the Benavides case. The court literally gave up jurisdiction, and the case, that case went away. In this case, the complaint's still on file, and we have a claim in that complaint. If, in fact, we were good enough to come in in intervention, I don't understand the loss of one party creating a loss of jurisdiction in its entirety. Was the statute of limitations, I guess so, waived when you intervene? Well, was it, and I believe that it was. And I don't see that it could be anything other. Otherwise, we wouldn't be allowed to be in there. If a statute of limitation is an absolute bar, then we shouldn't be there at all. But that was waived by the party who would rely on the statute of limitations by letting us intervene in the first place to prosecute this case. But what happened here? This is the one where there was some delay. You all were ---- We were. We were trying. We waited six months to file our intervention agreement. I know that there is one case that I've cited where there was 27 months. We were trying to settle the case. We were unable to settle the case. And once we were unable to settle the case and had learned that, we filed the intervention. So, yes, we were six months. We held it. And we have to live by that, of course. Apparently not, according to you. I mean, you could wait and then join as an intervener and you're no harm, no foul. Well, I suppose if everything was over and we tried to jump in, then perhaps we should be barred. But what we did was we tried to settle the case, which is what we all try to do. When that was not ---- when we were not able to do that, then we went ahead and filed our intervention so that we could participate in the proceedings. Let me see. Is it your position that when one cap initiates the adversary proceeding? Yes. And then your clients intervene? Correct. Timely. Correct. Well, yes. And then one cap gets dismissed by the bankruptcy court. Right. So now you're left with an adversary proceeding with your clients there as interveners but not as party plaintiffs. They're just sitting there now. Do they have the power to step into the shoes of a complainant, an intervention, one cap, and proceed? Or are they just limited to sitting there as interveners without an underlying complainant? They were required to adopt the complaint of one cap. That was ---- both Bustos and Sully adopted the complaint of one cap because it contained their cause of action. Now, they were limited to that complaint. They couldn't add any further claims or amend it? The bankruptcy court said no. So we would be limited to that complaint. And we would be willing to prosecute under that complaint because it states our cause of action. So you're saying that your part in the one cap complaint still lives even though you were not able to file it because it was time barred? That's correct. That's correct. If we ---- And the authority that you're relying on for that is Benavidez? No. No, actually, I cited the U.S. Steele case for that proposition. If, in fact, the U.S. ---- if, in fact, Scott Paper ---- if we were time barred, then I would suggest that Scott Paper was time barred because they ---- though they filed intervention timely, they did not join ---- they did not file the request for judicial review timely. They were time barred as far as the judicial review is concerned. But because they were interveners, the Third Circuit allowed them to continue their complaint, which very much like this case, stated the same claims as the original complainant. Did you say you miscited a case, sir? I did. Which one was that? I'll tell you right. It was a ---- and I can't even pronounce it. The case had been overruled. It's called N. Ray Kang Jin Wang, and it's bankruptcy court, 396 Bankruptcy Court, and it's a 757-2008 case, which was overruled in 2010. I cited that as a ---- and also ran, and now I wish I hadn't. Thank you very much. Thank you, Your Honor. Good morning, Your Honor. Good morning. May it please the Court. John Netzorg on behalf of Augustine Bustos. On May 1, 2007, Augustine Bustos purchased an $800,000 interest in a note and deed of trust for a project that actually is right across the bay here in London. He was assigned the obligation, and he became one of the independent lenders on this obligation and guaranteed by Mr. Mulaski, who's the debtor in this case. On May 3, 2008, Mr. Mulaski filed bankruptcy. One Cap is the servicing agent for the principals on the loan, for the beneficiaries on the loan and the deed of trust. One Cap, on August 11, 2008, filed a complaint under 523 for the benefit of all of the Ellington investors, and Mr. Mulaski, excuse me, Mr. Bustos and Mr. Sully were investors in the Ellington loan. One Cap announces on page one of its complaint that it is filing this action as a servicing agent for the successors in interest. The amount of the loan, the Ellington loan, is firmly identified. One Cap's limited capacity is firmly identified. Nowhere in the complaint or the language of the complaint does it suggest that One Cap is presenting claims on its own. It's not making claims for fees, for servicing loans. It's simply filing a loan for others. Nine days later, on September 20, 2008, Shearson, who had provided financing, had brought an action on an unrelated matter to seek a settlement. Bustos appeared through counsel at the Shearson hearing. And in order to get concessions from Bustos, the debtor, Mr. Mulaski, entered into a stipulation. That stipulation was incorporated into the court's findings of fact, and it was made an order. In that stipulation, I believe it appears at pages 0036 through 0048 of Volume 2, Tab 6, this is what the debtor said. He's stipulating to let Bustos intervene in the pending 523 action. Bustos is already there. His Ellington obligation is already there. His servicing agent has filed this. But there's a stipulation to intervene. There's no restriction on whether it's a 24A. There's no restriction on whether it's pursuant to 24B. There's absolutely no mention of 24C. And now that we have had an opportunity to review the intervention cases, this is a more common problem than one would think. It's not uncommon, and Professor Wright comments on it. It's not unusual for the court to enter an order and not distinguish whether it's pursuant to 24A or 24B. In the very same language, I'm talking about three or four lines. This is not complicated. The debtor expressly waived the statute of limitations and expressly waived the timeliness of the motion to intervene. A motion to intervene is a court order. Where's the waiver? Where is it? It's on the record. That record is incorporated into the judge's order. It's August 20th, 2008. It is a court order in bankruptcy containing this waiver of the very statute of limitations that we're here about today. Now, as far as addressing 24C, 24C is mandatory. And it says clearly there shall be a pleading with a motion. Bustos had 20 days to file the motion to intervene. Bustos parroted the claim, the Ellington claim, because that is his claim. That is he owns that claim. The claim that the servicing agent has brought, he duplicated in his pleading, and he attached it pursuant to 24C and filed the motion to intervene. When the motion was filed on September 8th, the debtor hadn't even answered the adversary proceeding. This was very early in the proceeding. Three days later, the debtor files his answer. It does not raise the timeliness of any adversary proceedings as an affirmative defense. In fact, it only raises three affirmative defenses. Now, for the first time, the debtor comes in and says, hey, listen, Judge, we didn't stipulate to waive the statute of limitations. We didn't stipulate to permit a mandatory 24C motion. We just stipulated that they could intervene. Well, Your Honor, 24C makes the pleading mandatory. It's nonsense to suggest that unless they carved out 24C, that the requirement of a pleading that is not even addressed in the stipulation was somehow eliminated. And at this point, there was a request. The motion was made pursuant to 24A and B. There was a request for intervention as a matter of right because it was Mr. Molenski was due to it as a matter of right. He was the owner of the interest. He timely made his request for the intervention. He was going to be adversely impacted by a determination. But there was one factor he was a little thin on. And that was the fourth factor for a 24A2 intervention, and that is, are you adequately represented? Presumably, the judge could have said, hey, no, one cap's here defending this. We don't need 200 or 300. But as far as being entitled to intervene, he was entitled as a matter of right. He had an ownership interest, $800,000. That wasn't even at issue. What happened was, as a consequence, and I'm running out of time, so I'll jump forward to a couple of the arguments. These are common circumstances. What does this Court do with it? What has this Court done in the past? We cited the Westchester case in our brief, which is another more closely parallel case. It's an insurance subrogation case, and it's more closely aligned with the issues in this case than are the governmental intervention cases or the well-funded nonprofits that deal with different factors. What happened in Westchester? There was litigation brought for the declaratory relief action. The injured third party is frequently the case, has filed a lawsuit somewhere else. In this case, it was Northwest Airlines. They got a default judgment in Minnesota. Meanwhile, the insured in Las Vegas didn't bother to provide a defense, didn't show up at his deposition, eventually gets tossed out by a default judgment by Judge Pro for a sanction. It's the very thing that happened here. After the bankruptcy judge permitted intervention, there's an order permitting Bustos to intervene. There is an order that says that Bustos has all of the rights and duties of a party. He calls it a claimant intervener, whatever that means. We're coining new phrases. For all intents and purposes, it's a party. He's limited to the pleading that has been filed by one cap. In this case, the proposed 24C pleading is identical with a couple of factual paragraphs. The claims are identical. In Westchester, what happened? The Northwest Airlines didn't file a lawsuit, and the Court held that they were okay to adopt the initial pleading. They cite Professor Wright, why the pleadings are identical, to request somebody to have additional pleadings. And there was an adoption of the pleading, just as there was here, except the con ---- I'm sorry. But I guess just before your time is completely up, when you entered, there was, I guess, a stipulation for a very limited, narrow purpose to assist one cap. No, absolutely not, Your Honor. That was a refashioning of the facts to suit later arguments after they found a case that said that. If the Court reviews the transcript, the stipulation is clear in its face. It says we stipulate to allow Bustos to intervene. He's going to have all the rights and entitlements as one cap, as if he'd filed the plain ---- the pleading. We're stipulating that we waive the statute of limitations and timeliness. And you were prohibited from filing your own complaint. Were we prohibited? No. You weren't. You could have filed a complaint at that time. When they stipulated to intervention, Your Honor, intervention includes 24C. It's part and parcel of the program. It would be a pleading. The question is, was it jurisdictional? No. There's nothing in the 253 discharge, non-dischargeability section that makes it jurisdictional. We cited the Supreme Court Ryan case to this effect. DeSantos from the BAP also discusses that. Why did you need a stipulation with Mulaski to intervene, then? This was offered. And we put this on the record, too, Your Honor. We set it on the record in front of the judge on the 20th of August, 2008. Judge, we're already in this action. However, out of an abundance of caution, we're being provided this additional right. And that is basically the Seventh Circuit, I believe, actually has a special rule. If you are a party that potentially could intervene, but you're adequately represented or that potential argument is there, you don't make the presentation you might be required to file a pleading and then wait and see if the representation is adequate. In this case, we have a total defalcation, a breach of the loan servicing agent's duty to defend, and we have an inadequate representation. Sully, you know, for whatever reason, is what would normally happen. If there's an agent under 24-2, we've cited the comments from the rule, that there's another whole subset of individuals that benefit from intervention, and those are beneficiaries of trust, principals and agents. And if they're adequately represented, that's fine. Maybe they don't get to intervene. Maybe they have to wait until there's a defalcation. What better – what greater evidence of that could there possibly be than being dismissed for want of prosecution? I'm sorry. Your time is up. Oh, I'm sorry. Thank you. Thank you, Your Honor. May it please the Court again. Let me – I'll address some of Mr. Netzler's points first because they are the most recent. He says that there is a stipulation allowing them to intervene. I have to disagree with that. You will search the record in vain and you will not find any such stipulation. What the bankruptcy court observed was is that there was a discussion on the record before on another proceeding about whether or not they would stipulate to allow – whether he would be allowed to intervene because his intervention would have been untimely. What the point being made was – and this is what the bankruptcy court so found was – they were agreeable to him intervening, and that's why, by the way, there was no stipulation filed. That's why he filed a motion to intervene. If that stipulation had been filed, there would have been no motion to intervene. He filed a motion. It was not opposed except to this extent. The extent that he was trying to assert claims individually because he was time barred. And I have to say, in the context of a bankruptcy case like this, dealing with the importance of the bar to nondischargeability, the proposition that Bustos and Kelly are advancing here would create, in my view, an awful lot of havoc in the bankruptcy courts if this theory that, well, if somebody files a contest to dischargeability, everybody else can now come in after the fact, after the bar date, and say, I'm going to now piggyback on this. And, well, they filed a claim, so I now, too, want to file a claim, even if the subsequent – or the original plaintiff's claim is later dismissed. That would, in my view, and I would think in the bankruptcy court's view, allow interveners, and this is what the bankruptcy court said, allow interveners to simply resuscitate dead claims and allow the bar date to be substantially eroded by subsequent intervening parties. And that, I think, is a dangerous precedent to be setting in the context of the importance of the bar date in bankruptcy cases. Let me interrupt. Yes, Your Honor. There's an October 31, 2008 order by the bankruptcy court allowing Bustos to intervene. So he moved to intervene. So that's a permissive intervention? Yes, Your Honor. Did not that order specifically prohibit Bustos from filing a separate complaint intervention? Yes, because we had opposed that. We specifically said we would not, because he had proposed to file a separate complaint, and our point was his claim is time-barred. If he wants to intervene to assist one cap, that is the point that we did not object to. But to the extent he was trying to now interject and assert claims in his own right, that was the basis of the objection, and that was the basis of the bankruptcy court's ruling, is that his claim was time-barred. He could not intervene to assert. Was there a specific prohibition as to Bustos filing a separate complaint intervention? Well, I believe, and I apologize, I can't remember the precise wording of the order, but my recollection of the order is that he was specifically, by the bankruptcy court's ruling, was not allowed to file his separate proposed complaint intervention for the very point that the claim was time-barred. His claim was time-barred because he had sought to bring that after the bar date. His servicing agent, one cap, had filed it on the last day of the bar date. In other words, he filed it on the statute of limitations period. And that's why we had opposed Mr. Bustos' attempt to now, as we had characterized it, and I think as the bankruptcy court agreed, bootstrap himself into having a valid claim after the claim had already been cut off. And you might recall, Mr. Bustos had insisted before the one cap had filed, he had even sent a letter to one cap telling them one cap had no ability. He had revoked, Mr. Bustos had revoked his power of attorney, and counsel had sent one cap a letter telling them, you have no ability to take any action on behalf of Mr. Bustos. And that letter is in the record. The point being is there's this sort of argument that one cap's their agent some of the time, but then one cap's not their agent in other points in time. And we think that was, of course, our point is that was the problem being created in front of the bankruptcy court with this claim that, well, one cap can't act for you and you're not bound by what one cap does. But on the other hand, even before the bankruptcy was filed, Mr. Bustos had insisted that he had revoked his power of attorney and that one cap could not take any actions on his behalf. If that is true, that Mr. Bustos cannot come claiming now, well, they filed the claim, my claim, on my behalf, and so therefore I'm allowed to now come in, intervene, and then argue that I relate back. Now, let me deal just quickly, because I promised you I wouldn't take the minutes, with Mr. Sully. I shouldn't say Mr. Sully. He's not a personal plaintiff. The Sully Profit Sharing Plan. One cap was dismissed. The claim was dead for a month. I believe it's about a month. And then the stipulation came into being filed. So to say that they had already intervened prior to one cap being out is simply a misstatement of the record. One cap, the one cap complaint had been dismissed. Once the motion practice then was underway with respect to Bustos, they then brought forth that stipulation that had been entered into months earlier and then tried to intervene. But again, the claim was already gone at that point in time. You can't say, well, I've now intervened, so therefore I have taken on that particular complaint on behalf of one cap, because one cap's complaint had been dismissed. And if the Court doesn't have any further questions for me? I do. Yes, Your Honor. You know, this is a difficult case involving real refinements of bankruptcy practice, and I don't see that there's any strong precedent. You have lost in the district court. Your appeal was from the judgment of the district court. And in the absence of any clear precedent, and with really pretty serious arguments on both sides as to the technicalities of bankruptcy practice, my approach, and I'm bankruptcy is primarily governed by equity. That's the way I've always understood it. We try to do equity in bankruptcy. There's been a failure. There's been a mess. We're trying to straighten it out as equitably as we can. And here you've got two parties that say, we're the real parties of interest. We're owed money, and we're being deprived of a chance to get it. So equity sort of pushes in that direction. I don't say it's decisive, but it pushes it that way. Now, if you confront all this from the perspective of someone like me, you think, well, why can't they settle it? They tried. They failed. But you would save us a lot of work, and you might save your client a lot of money if you could work out a settlement. Do you want to think about that at all? Well, Your Honor, I have to tell you, I'm not in a position to tell you what my client's position is on this, because we have to recall the context in which we're here on this claim. This was a Chapter 11 bankruptcy filing. What we're talking about here is claims that the debts are not dischargeable due to fraud. That's what this contest is about. And that's why, and again, I understand, I appreciate your arguments about, or your view about equitable principles, but that's why Congress has set the bar date on these claims very tightly. And that's why the bar date matters, because if you're going to contest dischargeability in a bankruptcy proceeding, especially on the grounds of fraud, that bar date is a firm date. The bar date here was not satisfied by either of these parties. Now, and I understand they've got their arguments that they should be able to get around the bar date by claiming that they have intervened, even, you know, Bustos intervened before the one-cap claim was dismissed. Sully didn't even intervene until after it had been dismissed. So I can appreciate the points, but, you know, here at oral argument trying to address the court's, the legal principles, I'm not really in a position to tell you whether or not the claim can be settled, because I just, I don't want to. Would you want a little time to find that out? I mean, if, obviously, the court will take this matter under advisement, and if the matter is settled in the interim period, we would certainly notify the court prior to the entry of its decision and order on the matter. But that's really all I'm in a position to do at this point today. Well, would you be willing to discuss settlement? Would you kindly, not settle, but discuss settlement? Well, of course I would. I mean, I always am interested in doing that and always willing to do that.  Our position is, is that, and again, and I can appreciate the fact that we are the party appealing from a district court decision, but we had prevailed in front of the bankruptcy court. The district court had disagreed. Your review is de novo, and the district court's decision doesn't receive any weight at all in this regard. So it is purely a question of law for this court to decide. In the interim period, I mean, I will take the suggestion and certainly speak to the client. And I've known these two gentlemen pretty much my entire legal career. So we have a very cordial relationship and I have no problems communicating with them if there is some basis to do so. Well, could we not stay in our decision pending resolution and settlement, non-resolution? Well, we'll discuss that. We'll talk about that. But I think do you have any other questions?  Do you have any other questions? Okay. Thank you. Thank you, Your Honor. This case will be submitted. And thank you very much for your arguments and for your willingness to work with the two cases here today with us. Thank you.
judges: Timlin, Noonan, Murguia